et. al. Appeal No. 19-1786 and Appeal No. 20-1284. Attorney Lopez, please introduce yourself for the record and proceed with your argument. Good morning again. Vamily Lopez-Ortiz for the appellant. Judge Thompson, good morning. Before we start, can I reserve the floor for Judge Thompson? Yes. Thank you. Counsel Lopez, before you start, I don't want to interrupt you, so I'll advance you what my questions are. First of all, and foremost, where in Puerto Rico law is there an obligation that the parties to an agreement that does not contain a refinancing provision must engage in refinancing? So that is the most important question I have. And again, there's no written, at least in the agreement, there's no written language containing such provisions. So that's the principal question, and if you could address that. Thank you. So I'll address your question, Judge Helpy, if you allow me to make an introduction of how I got there. Yes, go ahead. Thank you. My clients made a commercial loan in September of 2006 with Eurobank. That loan contained a financing agreement, and it said that they were going to refinance that loan every three years if they met with the approval guidelines. It was a $1.2 million loan amortized to 25 years, but it had a three-year term. That's what's called a double balloon loan. In September of 2009, the loan was refinanced by Eurobank and my clients, and it was refinanced to a 20-year amortized payment, under the same terms that it was going to be refinanced within 36 months or three years if my clients met with the approval guidelines. Attorney Lopez, let me just ask you this. The first agreement clearly said it anticipated refinancing every three years, but that dropped out of the subsequent refinances. The question is, what is the legal significance of the subsequent refinance packages not containing the same language? Well, the 2009, there's only one other financing agreement, the 2009. If we do not consider the April 2013 loan approved by Oriental as another contract to be guided in this case. But if we take the 2009 financing agreement, it dropped the 36-month approval guideline refinancing, but it did include a date for the review of the credit facility. It specifically included May of 2010 as the date to review the credit line provided to my clients as the people that had the loan. So that language changed, but it still included the reference to reviewing the credit in May of 2010. Did the 2009 agreement refer at all to the 2006 in its wording? In other words, is there a plausible incorporation by reference argument? I do not recall, Your Honor. I would have to double-check the agreement. But the way my clients understood it was that it was a renewal of the same loan because the first loan was for 25 years amortizement. The second was for 20 years amortizement, and it would go down until it would match the term of the loan itself. Counsel, what your client understands, that's subjective. We're dealing with a written contract, and what Judge Thompson asked, is there any language? If there's language incorporating, that's fine, but that's what you have. You have a contract. The other question I have is the credit, in fact, was reviewed. The fact that it's not refinanced, again, it's another matter. There's no agreement to refinance. Sorry, I made two questions. Well, I was going to address the question you made, Judge Helpe, and you asked me, what is the Puerto Rico law that allows for this contract, which does not specifically mention the obligation to refinance, to be understood that it includes a refinancing obligation? That's where our brief addresses that specific situation, explaining that in Puerto Rico, we have the opportunity to present evidence to show what was the intent of the parties at the time of contracting. Four minutes remaining. Thank you. And it is important, Judge Helpe, because it is important to know exactly, to know the intent of the parties at the time of contracting, because there were actions regarding that second financing agreement that made it understood differently. For example, after that 2009 financing agreement, Appellants did communicate with Oriental and Oriental's servicer, Bayside, and they started the process for refinancing, and they submitted the information to be refinanced, and Oriental sought and provided, actually, the Bayside, who is the servicer, sought and Oriental approved an extension of the maturity date of the loan while they were negotiating the terms of this new contract to refinance that loan. That is the draft that my client received in March, and which we learned in discovery that Oriental approved in April of 2013,  so if you take those actions, the actions of the parties in the enforcement of the contract, there is that deportation arises of that obligation to refine. But under Puerto Rico law, specifically Article 1233, when a contract is clear, and it's unambiguous, you don't bring extrinsic evidence. Don't you have a stumbling block there? Well, the contract, the way I understand Puerto Rico law, Your Honor, Judge LP, is that I can bring evidence to show the intent of the parties because this is the way the contract was interpreted by the parties. Because if Oriental had not engaged in the refinancing negotiation with my client, if Oriental had not sought an extension of the maturity date in order to do that negotiation, then it would be clear that they had no intention and they felt no obligation to refinance that loan. But the actions by Oriental show that they interpreted the contract to have that obligation to provide that refinancing of the loan. But where in the contract, is there any ambiguous term? Because if there's no ambiguity, we don't go to that step. That's what I'm asking. Where is the ambiguity of the contract that would allow the court to look into the parties' intentions or to extrinsic evidence? What I'm trying to say is that in order, if the ambiguity is between the actions of the parties and what the contract says, not what the contract itself says. If you take the contract and the reference to the May 2010 revision of credit, plus the actions of the parties of Oriental and Appellant of the refinancing, that is where I can bring the evidence to show that the parties understood that this contract, this financing agreement, obliged a refinancing. Now, so are you saying that even if the – I guess this is – I think I may share Judge Halpy's puzzle on this. You seem to be saying that even if the contract language is unambiguous, if you can cite some conduct of one of the contracting parties, some oral representations, that may be at odds with the unambiguous language of the contract, that those external conditions can introduce an ambiguity that then allows you to bring in all this other evidence? It does not introduce necessarily an ambiguity. It means it could be interpreted that the contract has been modified, that innovation of the contract had occurred, because the contract in Puerto Rico can be modified by the actions of the parties. So it is not a matter of extrinsic evidence to see that the contract was ambiguous, but to show that the parties understood that there had been a change in their relationship, and they were committed to do this refinancing at that time. But for a modification of a contract, if the parties did so, it has to be in writing again, and that's not in writing. Let me finish. You're trying to prove that the parties intended to modify the contract, but they didn't sign it or anything, but it's not in writing. That's the situation, at least from the record we have. But the thing is that in Puerto Rico, there's no obligation for contracts to be in writing. Contracts can be verbal, and even commercial contracts can be verbal, as long as you can prove its existence with other evidence, which is not only verbal or the testimony of a person. So there is no prohibition to have a contract modified by a verbal agreement. Just very quickly, just very quickly, if we could please. Yeah, and I have another question also. Oh, please, Chancellor, go ahead. Please, go ahead. So the loan has been paid off. Notwithstanding all the jurisdictional things that my colleagues and I are going to have to figure out later on about if things were appealed in a proper fashion, but the loan has been paid off. What's still alive on appeal? All my claims, all of Apelan's claims against Triangle, and the counterclaims against Oriental in the third-party complaint, and the claims of damages consequent to the prejudgment ex parte attachment in violation of the rules of civil procedure. So, you know, my client's entire commercial income was attached. There's no bond, no hearing, no notice. There's no accounting of what money Triangle received from that. So I still have a claim for the damages caused by that. Even this is assuming that Triangle says, oh, I have no claim anymore, so I'm going to withdraw my complaint. Even then, when I have a right to claim the damages that Apelan suffered from the illegal prejudgment attachment, and I also have a right to continue with my breach of contract claims against Triangle, which was a counterclaim, and against Oriental, which was a third-party complaint. I mean, it's breach of contract and fraud. Judge LaPierre. Thank you. Just two very quick questions. You do raise the statute of limitations issue, but that was never raised as an affirmative defense below. So isn't that clearly waived? I mean, that may be beside the point, because that does go to sort of the argument that they had no right to basically file to collect on the debt. But didn't you, under Puerto Rico law, you've waived that claim, have you not? Because it was never raised. We respectfully disagree, Judge. I'm sorry? We respectfully disagree, Judge Lippes, because at least the case law that I revised, and that I used to present this claim to the district court, identified that even if you did not specifically address this defense as an affirmative defense, if you raised another one that was more ample, more encompassing than the one you presented, you could present it. And most importantly, if the complaining party anticipated that. And it is very important, because Triangle never alleged in any of its allegations when was the supposed maturity date of the loan. And this is important, because I have a financing agreement that was signed in 2009. Supposedly, it would have been matured in December 2012, but we discovered in discovery that they had granted extensions to that date at least until May of 2013. So this was discovered in discovery. And if the maturity date is that one, then it was time barred. So what I argued was that by alleging Laches and Estopel as one of my affirmative defenses, that was sufficient to reserve the argument of time bar statute of limitations when it became apparent to us, which was when Triangle replied to our opposition to summary judgment. It would be under the federal rules of evidence, not Puerto Rico law. But to the second question, very often the kind of contracts we're dealing with here will contain a provision that there will be no oral modifications of any kind to the language of the contract. Is there such a provision in the contracts that we're talking about here? No oral modifications will be allowed? I think the contract states that modifications have to be in writing. Okay. Well, that's all right. That sounds a bit problematic for you, but you can respond to that in rebuttal, I guess. All right. Thank you. Thank you, Counselor. Thank you. Thank you, Attorney Lopez. Please mute your audio and video at this time. And, Attorney, I believe we're going to hear from Attorney Velez-Rivero first. And you have five minutes. Please introduce yourself on the record to begin. Thank you. Good morning, Your Honors. Again, may it please the Court, Carolina Velez-Rivero on behalf of Appalachian Cross, Apple, and Triangle Cayman Asset Company. I had the intention of beginning my argument with the jurisdictional arguments re-raised and are adjoined to the motion to dismiss and are brief. But I do want to clarify something that Appalachian Council mentioned in response to Judge Thompson's question. And that is the fact that the loan agreement that we're looking at, which is the basis of our complaint, the December 23, 2009 loan agreement, does not reference in any way the previous loan agreement, does not incorporate it by reference. This is a new agreement. And the previous agreement was extinguished through the execution of this agreement. In addition, I do want to reiterate again something that Apple and its counsel did admit, the fact that the- What about the fact that the 06 contemplated a 25-year amortization? Can you repeat the question? The 06? The first, the initial. Right. Because through the execution of this financing agreement, the previous obligations were completely extinguished. The terms and conditions that apply are those of this financing agreement. And the other terms and conditions are no longer valid. So, in other words, Oriental could have just made a decision once the 06 contract ended to demand its balloon payment. It could have. And not engage with the new refinance agreement. It could have. But at the time, it decided to draft this financing agreement with them in 2009. And set forth the term that it detailed here for a new maturity date. And the new terms and conditions that are in the document. I do want to, again, reiterate that the financing agreement is very clear that not only any amendments need to be in writing, but they need to be signed by both parties. And that did not occur. There's no evidence in the record that any amendment was ever signed after the execution of this financing agreement. And to address one last thing that Applin's counsel mentioned, she said that the statute of limitations, she failed to raise it timely because she only found out through discovery of when the date that the day that triangle, the amount of time the triangle had to file a complaint. But that is incorrect because the date arises from the exhibits that were submitted with the complaint. And that was the first thing that was filed in this case. And she was served with a complaint in all the exhibits. So, I would like to switch now. What was the district court's justification for not even ordering and accounting for the rents? The court didn't provide a justification. It granted the ex parte order attachment because Triangle complied with the requirements under Rule 56.4 of the Civil Roots of Puerto Rico procedure, which don't require a specific accounting. It just requires that in order to grant an ex parte attachment, the request. Yeah, go ahead. But the court still granted judgment for Triangle and Oriental on the counterclaims. It granted the dismissal of Appellant's counterclaim. Which means that there was never an accounting? There was never, no. There was never an accounting rent. The court did not request it and the orders do not require it either.  I'm sorry? Is that error? I don't think it's an error because the rules don't require that an accounting be carried out once a court grants an ex parte attachment on rents. So, I don't have any problem with the ex parte granting of relief. I don't understand the theory as to why no accounting would be required of ex parte seized money. I think it's to the discretion of the court and the court didn't understand it was necessary to request an accounting. Eventually, Triangle prevailed in the merits of a complaint. But, you know, it's well within the discretion of the court and it wasn't again required to do so. Counselor, you were going to address the jurisdictional matter. So, if you want to, I was going to ask you that. Go ahead. Yeah, thank you. So, we have, we respectfully submit that this court lacks appellate jurisdiction for three separate reasons. First one, mootness due to the Appellant's satisfaction of the outstanding debt in its totality. In fact, upon received by my client of the total amount we delivered to Appellant's counsel, the mortgage notes, promissory notes, guarantees, assignment of rents, loan agreements. We are in possession of nothing. That's time. But what about their counterclaims that got dismissed? Why would they be moot? I mean, their reasons, they might be moot based upon what they failed to do to protect their appellate rights. But on the merits, why would they be moot? Because they're predicated upon the fact that they do not owe anything under the loan and that my client accelerated the amounts incorrectly. So, because they're predicated on the fact that they didn't have a reason to pay and that it was incorrectly accelerated, it could be, the argument could be made that they are in fact moot. But there are other reasons for lack of appellate jurisdiction, not only mootness, but the fact that the first notice of appeal filed by Appellants was filed prematurely from a non-final judgment. And because the third appeal that they filed was filed from an ineffective judgment while two of the Appellant defendants were in bankruptcy. And while this court was entertaining the second appeal, which is our appeal. I know I'm out of time, but I understand those three arguments on mootness, the premature filing of the notice of appeal, and the filing of a third appeal on the ineffective judgment. Basically, it deprives this court of appellate jurisdiction. Counsel, let me ask you, even assuming we find we have jurisdiction and the matter is not moot, I assume your position is, of course, you stand by Judge McGivern's report and recommendation adopted by Judge Pesosa to the effect that the counterclaims don't survive summary judgment, correct? Correct. Thank you. Thank you, Counselor. Attorney Beliz Rivera, at this time, please mute. And Attorney Beralt Suarez, if you could unmute your device and introduce yourself on the record to continue. Good morning, Your Honors. May it please the court, my name is Carlos Beralt Suarez, and I represent Third Party Defender Aveli Oriental Bank in this case. I would like to first address the first issue raised by Judge Helpic regarding the use of extrinsic evidence to find whether there's an ambiguity in the contract or not. Judge Helpic wrote in September 15, 2021, an opinion in the case of Travelers Casualty Insurance Company v. Vasquez Colon, an opinion that actually discusses this point very clearly under point B, page 5 in the applicable law section. It clearly states that when the terms of our contract are clear and leave no doubt as to the intention of the contract in part, the literal terms of the contract will be observed and the court should not look beyond the literal terms of the contract. That is, I think, the gist of what you were referring to before, and I think that's clear black letter law under Puerto Rico. There's no need to consider any extrinsic evidence when the arguments here are that the contract, a new contract, was never signed and was never executed by the parties. Also... Counsel, do you have the citation to that opinion by any chance? I think it's a slave opinion, but the citation is 2021 West of 426-788-3. 426-788-3. That's correct. And the name of the case again? It's Travelers and Casualty Insurance Company of America v. Vasquez Colon. Okay, thank you. Thank you. Also, going to what Judge Levesque raised about the statute of limitations in this case on whether it's an affirmative defense that needed to be raised at the time of the answering of the complaint, the reality in this case is that the answer of the complaint and the third party claims were filed in August 14, 2017. And it wasn't until November 28, 2018 that the issue of the statute of limitations was first raised by the debtors. As to whether there are any specific language in the contract allowing for oral modification, I wanted to point to the attention of the court that we did address in our brief the multiple instances where the documents required that a written modification be executed by both parties and that limit the availability of the parties to modify the agreement to only a written agreement. First, it's in the financing agreement. The financing agreement also states clearly that the term of the loan was 36 months, and there is nothing in writing that supersedes that agreement of the parties. The financing agreement also provided that upon expiration of the terms, subject to the terms and conditions set forth in this agreement, the great facility shall be paid in full principal and accrued interest. An event of default is also defined as a failure to pay any interest of principal on the promissory notes or any other amount payable on the agreement. Also, there is a written modification requirement expressly included in another document signed by the parties called the collateral pledge on security agreement, which is also referenced in our brief. There is also a similar provision requiring any modification to be in writing signed by both parties in the document captioned personal and conditional continuing guarantee, which is also referenced in our brief, and then also in a separate document executed by both parties called the unconditional continuing guarantee. So the letters had executed multiple documents that clearly required that any new agreement be executed by both parties and be in writing. I guess it is your position that whatever, I know Oriental eventually disappears from this scenario, but in terms of negotiating a new financing agreement, whatever representations were made by officials of Oriental Bank, whatever conduct they engaged in which led the defendants here to think that there might be a new financing agreement that would be in place that would permit refinancing, all that stuff is just a huge irrelevancy. Is that your position? Because the underlying agreement was clear. If there's going to be any modification, it's got to be in writing. And whatever we did to mislead, to induce, that's just irrelevant. I mean, that seems to be your position. Is that correct? Your Honor, I agree that it would be irrelevant for the matters at issue here and the way that the amended third-party complaint as to Oriental was crafted. I think the issue here is that the term of the financing agreement was very clear. It expired, it matured in 2012, and the debtors were required to pay the balloon that was owed, and nothing changes that obligation in writing or otherwise. Now, it's very important for you to notice three things that happened in this case, and it is that the theory of liability brought forth by the debtors changed throughout the case. The first instance, as they explained their theory of liability in their amended complaint, they argued that Oriental had breached the 2009 agreement because, as Judge Thompson was signaling with regards to the 2006 agreement, there was an obligation on the part of the bank to renew the loan. So that was their first theory of liability. Oriental breached the obligation to renew the loan when it became due. Then when we filed our motion for summary judgment in opposition to our motion for summary judgment, their theory of why Oriental had breached an agreement changed completely, and they argued that the theory was now that Oriental had internally, through a credit committee, approved a proposal draft for a loan renewal. Now, the record is clear that the debtors admitted they never appeared at a closing, and they were expecting to be called back to the bank for executing the closing of those documents. But they're arguing that because that draft loan agreement was approved internally by the credit committee, that that constituted a novation of the documents, that that constituted a new agreement, and that that was what Oriental was now in breach. And then lastly, the third theory of liability came up in their objection to the report and recommendation by the magistrate judge. At that third instance, they're no longer arguing that it was an obligation on the part of the bank to renew the loan. They're no longer arguing that it was a breach because Oriental didn't honor the loan draft proposal that was internally approved by a committee but never executed by the parties. Now they're arguing a third theory, which is that under the Puerto Rico torts doctrine of culpa en contraendo, when a party withdraws from negotiations in bad faith, it may be liable for damages for out-of-pocket expenses incurred in that negotiation. And that's their newest argument as to why Oriental may have harmed the debtors. So if we look solely at the allegations in the operative pleading here, which is the third-party complaint, it's enough to find that Oriental didn't breach an obligation to renew the loan. Thank you, Counselor. Any other questions? Judge Helper, you're mic. Yeah, I'm muted. Counselor, you mentioned the culpa en contraendo concept. Yes. My question is, was that raised originally in the third-party complaint or as a defense, or is it a matter that it's being argued now but it wasn't raised below? Because that's also an issue. Yes. I'm going to ask that to Ms. Lopez when she has her rebuttal. Yes, Judge Helper, that's a very good question. And the fact that it was first raised in the debtors' objection to a report on recommendation is very important. First of all, it wasn't included in the operative pleading. It's not in the amended third-party complaint. And also, as you know, that's a theory of damages under Puerto Rico torts law. And so there's also a very important study of limitation argument there to be raised, because even if they had argued timely that they had a culpa en contraendo case, which they didn't do, they would have known about it since the negotiations ended. And here, the evidence in the record shows that the negotiations ended in September 2013, because that's when we have the last emails exchanged between Oriental and the debtors when they're discussing an attempt to execute the loan renewal, which they didn't do. Any other questions? Yes, and let me just very briefly, very similar to that. For example, nobody here has raised the argument that this is a pre-contract, or there's damages for a pre-contractual relation, correct? I haven't seen it anywhere, but that's not raised anywhere, correct? That's correct, Your Honor. And I would go back to argue that the terms of the original contract are clear, that there was a duration in maturity date, that there was never a payment when the balloon was due, and that there was an obligation to modify the agreement only in writing and executed by both parties. Thank you. Thank you, Attorney Beral Suarez. If you could please mute your audio and video at this time. And Attorney Lopez-Ortiz, if you could please introduce yourself on the record to begin again. Again, Bamily Lopez-Ortiz for appellants. I would like to address first, if I may, a question made by Judge Thompson to Triangle regarding why didn't the district court provide for accounting of the monies that were being attached with that prejudgment attachment, no notice, no hearing motion order? The thing is that the Puerto Rico Rule actually requires the monies to be deposited with the court and not to be provided directly to the party that requested the attachment order. So this was also a difference in what the Puerto Rico rules provide. So there is no, the rules of civil procedure of Puerto Rico do not say you have to make an accounting of this. They simply say you have to deposit these monies with the court. But in this particular instance, the Puerto Rico rules of civil procedure were not only not followed regarding giving an order prejudgment without notice, without hearing, without bond, but also the court did not even require that the monies to be attached be deposited with the court which would obviously provide for an accounting of whatever was attached. So that is why there was no accounting of the monies attached because there was no provision for the monies to be deposited with the court. And in all effect, Triangle was receiving the money and put it in his pocket and we don't know how much it was. Second, I would like to address and maybe clarify, because I want to, there were questions asked by Judge Thompson regarding if the 2006 provisions of amortizement of the debt of 25 years and the expectation that it was going to be lowered eventually to match the term of the loan itself and the 2009 financing agreement, did it create an expectation that the loan was going to be refinanced? And at the same time, to address the question posed by Judge El-Pi regarding the interpretation of clear contracts. What I was trying to say, Judge El-Pi, and this is better explained in our opening brief at pages 43 to 47. What I was trying to say is the contract, the 2009 contract, if we were going to take that contract to be the one that controls the situation, that does not say you will not refinance. It simply does not say it will refinance. So there's no specific prohibition by the contract to refinance within three years. It simply does not say it. That is why I say that the evidence regarding the actions of the parties in the interpretation of the contract are important, because it will determine what the parties understood the contract to be. And that is why it is so important. Are you alleging fraud in the inducement? Yes, yes. Our allegations are against Oriental and against Triangle, obviously because Triangle carries with him whatever happened with Oriental. There was fraud and there was a breach of the 2009 contract. That was not the contract. With your client's signs. Your client entered that contract. Yes. It was a breach by Oriental of that contract, because it did require. That's time. May I finish? Is there fraud in entering that 2009 contract, or the fraud takes place in the performance? That's what I'm asking. The fraud takes place in the performance, because the parties interpreted the contract and the actions of the party contemporaneous to the contract show that they expected the refinancing to occur and actually carried all the acts directed towards refinancing the loan. And it was Oriental. So you got fraud in the inducement as to Oriental and fraud in the performance as to Triangle. And Oriental, because it was Oriental. And Oriental was the one that hid the fact that they, listen, give me the information so we can refinance. I provide you a draft. I submit this to my committee. I approve it. I tell you, I'm going to sign it, and then I never tell you that it was approved. I refuse payments. I continue to accept payments of the loan, even after the maturity date of the loan. I extend it so we can negotiate this. You don't ever, ever notify me that you approve the loan, and you don't ever, ever even notify me that I'm in default. The first notice of default was provided by Triangle in 2016. But Oriental never said anything of default. They just kept us, obviously, they were willfully blind, because the person that was in charge of this account was fired for mishandling another account. And when he was fired, Oriental decided not to do anything to verify what was going on with the other account. And one of the accounts was my client's. I was left in limbo. This man was lying about what was going on. And he, well, see no evil, no need to solve the situation. And those are the cases. Thank you, Joanna. May I be excused? Hi, thank you. That concludes our argument in this case. Thank you. Bye. Attorney Lopez, Attorney Velez, and Attorney Baral, you may disconnect from the hearing.